
# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN C. REED,<br><br>    Plaintiff,<br><br>    v.<br><br>C/O JAMES, et al.,<br><br>    Defendants.<br>_____/ | 1:10-cv-00073-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983, AND THAT THIS DISMISSAL BE SUBJECT TO 28 U.S.C. § 1915(g)<br>(Doc. 19.)<br><br>OBJECTIONS, IN ANY, DUE IN THIRTY DAYS |

**I.   RELEVANT PROCEDURAL HISTORY**

Stephen C. Reed ("Plaintiff") is a state prisoner, proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on January 14, 2010. (Doc. 1.)

Plaintiff's original Complaint contained a claim for violation of his rights to due process, based on a prison disciplinary conviction for which he was assessed a loss of three hundred sixty days of credit. Id. The Court screened the original Complaint pursuant to 28 U.S.C. § 1915 and entered an Order to Show Cause on March 23, 2011, directing Plaintiff to show cause why this action should not be dismissed pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), on the ground that Plaintiff had not alleged any facts indicating that his disciplinary conviction had been reversed, expunged or otherwise invalidated. (Doc. 9.) On November 7, 2011, Plaintiff filed a response to

the Order to Show Cause and a motion for leave to file an amended complaint. (Doc. 12.) Plaintiff also lodged a proposed first amended complaint. (Doc. 13.) The Court found that Plaintiff alleged facts indicating that his disciplinary conviction has been invalidated on due process grounds. Accordingly, the Order to Show Cause was discharged, and Plaintiff's motion for leave to amend was granted. (Doc. 14.) On November 9, 2011, the First Amended Complaint was filed. (Doc. 15.)

The Court screened the First Amended Complaint and issued an order on December 12, 2011, dismissing the complaint for failure to state a claim, with leave to amend. (Doc. 18.) On December 28, 2011, Plaintiff filed the Second Amended Complaint, which is now before the Court for screening. (Doc. 19.)

**II.    SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal 129 S.Ct. at 1949. While factual allegations are accepted as true, legal conclusions are not. Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

**III.     SUMMARY OF SECOND AMENDED COMPLAINT**

Plaintiff is presently incarcerated at Corcoran State Prison in Corcoran, California, where the events at issue allegedly occurred. Plaintiff names as defendants Correctional Officer ("C/O") C. James, Sergeant T. Gonzales III, Lieutenant F. Munoz, Captain M. Jennings, Lieutenant J. Kavanaugh, Correctional Counselor II D. DeAcevedo, Captain M. T. Cisneros, and Associate Warden K. Comaites.

Plaintiff alleges as follows. On August 24, 2008, C/O James falsified a Rules Violation Report ("RVR") against Plaintiff for possession of a modified ink pen fashioned into a prison-made deadly weapon. C/O James stated that she had been trained a few days before by Sgt. Gonzales regarding inmates using these ink pens as stabbing instruments. Sgt. Gonzales, the reviewing sergeant, signed the falsified RVR, allowing Plaintiff to be accused of possession of a modified deadly weapon. In a supplemental Crime/Incident Report, Lt. Munoz falsely reported that Sgt. Gonzales had received confidential information two days prior that Black inmates were altering and using ink pens as weapons. Sgt. Gonzales denied receiving this confidential information. Lt. Munoz used this fabricated, racially-motivated statement to place Plaintiff in administrative segregation ("Ad-Seg") while conspiring to justify the false charges and evidence. Lt. Munoz then sent this matter to the District Attorney for prosecution, where the case was declined.

On August 27, 2008, Plaintiff appeared before Captain Jennings for a Captain's Review. Although required to do so, Captain Jennings failed to examine the alleged weapon to determine whether sufficient cause existed to continue Plaintiff's placement in Ad-Seg. Captain Jennings had the authority to release Plaintiff from Ad-Seg, but he relied on the reporting employee's (C/O James) RVR.

///

///

On January 24, 2009, Plaintiff attended a hearing on the RVR conducted by Lt. Kavanaugh. Plaintiff was found guilty of possession of a deadly weapon, based on the misleading information on the RVR and failure to examine the evidence. Plaintiff was penalized by loss of three hundred sixty days credit and referral to the Inmate Classification Committee ("ICC") for assessment of a ten-month Security Housing Unit ("SHU") placement. On March 4, 2009, Plaintiff appeared before the ICC consisting of several defendants including CCII DeAzevedo, Capt. Cisneros, and Associate Warden K. Komaites. Plaintiff vehemently objected to the SHU placement, imploring the ICC to please look at the ink pen to see that it was not a weapon, and to realize that Plaintiff's due process rights were being violated. Plaintiff was told by the ICC members that there was nothing they could do because he had been found guilty, and Plaintiff could appeal the decision. The ICC imposed the ten-month SHU term on Plaintiff.

Plaintiff appealed the disciplinary action, and the initial RVR was ordered reissued and reheard. At a subsequent hearing on April 22, 2009, Plaintiff was found not guilty and his good-time credits were restored.

Plaintiff contends that the imposition of his SHU term caused a major change in conditions of his confinement. He endured eight and a half months of solitary confinement, from August 24, 2008 until May 15, 2009. Plaintiff was only allowed to have two bars of soap, toothpaste squeezed into paper cups (that starts to turn hard in 4 or 5 days), and lotion and shampoo in paper cups that begins to seep through after a few weeks. Plaintiff's limited food was opened and placed in brown paper bags, so that the food turned stale after 2 or 3 days. He was not allowed a comb or hair grease, resulting in a dry and itchy scalp. The rest of Plaintiff's property was boxed and stored outside, causing food products to spoil. Plaintiff's allowed canteen purchase was reduced from $140 to $45. All purchases were opened, removed from original packages, and placed in brown paper bags and paper cups, which reduced the time the products were usable. Plaintiff was allowed only one shower every three days, compared to a daily shower in the general population. If there were bed moves or other inmates acting out, shower privileges would be suspended altogether, and sometimes Plaintiff went without a shower for 4-5 days. Plaintiff was not allowed to make any phone calls, depriving him of the opportunity to speak with family members. Plaintiff's visitations were limited to one hour

behind glass with no physical contact, and it was more difficult to schedule visits. There was no air circulation, and Plaintiff was not allowed a fan, which he was allowed to have in the general population. There was no heat in winter. Plaintiff's access to recreation on the yard was reduced because of inclement weather, and SHU inmates were not allowed dayroom activities like in the general population. Plaintiff was not given adequate warm clothing to go outside in cold weather. If there were bed moves or other inmates acting out, yard time was canceled, and one day a week there was no yard at all. Without weather factors, Plaintiff's yard time was reduced to eighteen to twenty-one hours per month. Plaintiff was only allowed one package per year, instead of the one package per quarter allowed in the general population. Plaintiff's everyday normalcy was disrupted by being placed in Ad-Seg, causing him to be placed in the Clinical Case Management Program (CCCMS).[1]

Plaintiff requests monetary damages and costs of suit as relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

### A.  Due Process Claim

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process before being placed in segregated housing, Plaintiff must

---

[1] CCCMS, or Correctional Clinical Case Management Program, is a CDCR (California Department of Corrections and Rehabilitation) program for inmates with mental health concerns.

5

first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See id. With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). "A prisoner may challenge a state action which does not restrain a protected liberty interest, but which nonetheless imposes some 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Ramirez v. Galaza, 334 F.3d 850, 859-60 (9th Cir. 2003) (quoting Sandin at 484, 115 S.Ct. 2293; Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996)).

"Typically, administrative segregation in and of itself does not implicate a protected liberty interest." Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (citing Sandin, 515 U.S. at 486). The Supreme Court has concluded that prisoners have no liberty interest in remaining in the general population, see Sandin at 485-86, or in remaining free from administrative segregation or solitary confinement, see May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997). However, "[i]f the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process." Id. (citing Sandin, 515 U.S. at 484; Keenan, 83 F.3d at 1089). "There is no single standard for determining whether a prison hardship is atypical and significant, and the 'condition or combination of conditions or factors ... requires case by case, fact by fact consideration.'" Id. (citing Keenan, 83 F.3d at 1089). "Three guideposts cited in Sandin's analysis, however, provide a helpful framework: 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prisoner's discretionary authority, 2) the duration of the condition and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence." Id. (quoting Sandin, 515 U.S. at 486-87; Keenan, 83 F.3d at 1089).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. With respect

6

1 to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994). "Some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . ." Id. at 455-56 (emphasis added).

Plaintiff alleges that his original RVR, which resulted in his placement in the SHU, was ordered re-issued and re-heard, Plaintiff was found not guilty at a subsequent hearing, and his three hundred sixty days of lost credit were restored. Plaintiff describes the limitations he endured during eight and a half months of solitary confinement, such as showers only once every three days, fewer toiletries, no hair grease, food that turned stale in 2-3 days, reduced visitations and no phone calls, poor air circulation and no heat in winter, reduced privileges at the canteen, reduced outdoor recreation, and no dayroom activities. Plaintiff does not allege that these conditions were worse than those endured in discretionary segregation, and because his days of credit were restored, the length of his sentence was not affected. While it was undoubtedly uncomfortable and unpleasant to have his usual privileges limited, Plaintiff has not described hardships on his daily life that are atypical and significant in relation to the ordinary incidents of prison life. Thus, the conditions imposed upon Plaintiff in the SHU do not meet the burden required by Sandin, and Plaintiff fails to show that he had a liberty interest in being confined in the general population. Therefore, Plaintiff fails to state a due process claim, and this claim shall be dismissed.

///

///

**B.     Eighth Amendment - Conditions of Confinement**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

Inmates have a constitutional right to outdoor exercise under the Eighth Amendment. Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010). "'[S]ome form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates.'" Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)). Thus, "[the] deprivation of outdoor exercise [can] constitute cruel and unusual punishment." Allen, 48 F.3d at 1087. While the temporary denial of outdoor exercise with no medical effects is not a substantial deprivation, May, 109 F.3d at 565, in this Circuit, the deprivation of regular outdoor exercise for a prolonged period is unquestionably sufficient to meet the objective requirement of the Eighth Amendment analysis. Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (denial of all outdoor exercise for six weeks meets objective Eighth Amendment requirement); Allen, 48 F.3d at 1086-88 (forty-five minutes of outdoor exercise per week for six weeks meets objective Eighth Amendment requirement). Regular outdoor exercise is necessary "unless inclement weather, unusual circumstances, or disciplinary needs ma[k]e that impossible. Spain, 600 F. 2d at 199.

///

1  Plaintiff has not described conditions rising to the level of an Eighth Amendment claim.
2  Plaintiff's allegations that his liberty, visitation with family members, showers, telephone access, and
3  outdoor recreation were limited for eight and a half months do not describe extreme deprivations or
4  inhumane methods of punishment. Plaintiff alleges that without weather factors, his outdoor
5  recreation time was reduced to eighteen to twenty-one hours per month; however, some of this
6  limitation was due to the cancellation of yard time when there were bed moves or when other
7  inmates acted out. Moreover, Plaintiff has not alleged facts demonstrating that prison officials knew
8  of and disregarded a substantial risk of serious harm to Plaintiff, nor has he alleged that he suffered
9  physical injury. The Prison Litigation Reform Act provides that "[n]o Federal civil action may be
10 brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional
11 injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).
12 Therefore, Plaintiff fails to state a claim for adverse conditions of confinement in violation
13 of the Eighth Amendment, and this claim shall be dismissed.

**V.  CONCLUSION AND RECOMMENDATIONS**

15 For the reasons set forth above, the Court finds that Plaintiff's Second Amended Complaint
16 fails to state any claims upon which relief can be granted under § 1983 against any of the
17 Defendants. In this action, the Court previously granted Plaintiff an opportunity to amend the
18 complaint, with ample guidance by the Court. Plaintiff has now filed three complaints without
19 alleging facts against any of the Defendants which state a claim under § 1983. The Court finds that
20 the deficiencies outlined above are not capable of being cured by amendment, and therefore further
21 leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez, 203 F.3d at 1127; Noll
22 v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).
23 Accordingly, the Court HEREBY RECOMMENDS that this action be dismissed, with
24 prejudice, based on Plaintiff's failure to state a claim upon which relief may be granted under section
25 1983, and that this dismissal be subject to the "three-strikes" provision set forth in 28 U.S.C. §
26 1915(g). Silva v. Vittorio, 658 F.3d 1090, 1098 (9th Cir. 2011).
27 These findings and recommendations are submitted to the United States District Judge
28 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty days

9

after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 30, 2012**              /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE